# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| LLENER GODINEZ-LOPEZ, <br><br> Petitioner, <br><br> v. <br><br> SCOTT LADWIG, Acting Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and TRINITY MINTER, Warden of West Tennessee Detention Facility, <br><br> Respondents. | No. 2:25-cv-02962-SHL-atc |

## SUPPLEMENTAL ORDER GRANTING PETITION

Petitioner Llener Godinez-Lopez filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 on October 17, 2025. (ECF No. 1.) The Court issued an order for Respondents to show cause why the petition should not be granted on October 20. (ECF No. 9.) Respondents filed their response two days later. (ECF No. 11.) Godinez-Lopez replied the next day. (ECF No. 14.) The Court held a hearing on the petition on October 24 (ECF No. 16), and granted the petition the same day in a summary order (ECF No. 15). In granting the petition, the Court stated that it would issue another order explaining its full reasoning. (<u>Id.</u> at PageID 87.) This is that Order.

For the reasons stated below, the petition is **GRANTED**.

## BACKGROUND

Godinez-Lopez, a citizen of Guatemala, entered the United States as an unaccompanied minor without inspection in February 2022 when he was sixteen years old. (ECF No. 1 ¶ 44.) Border Patrol agents apprehended him a few days later and charged him with being removable as an alien present without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i). (Id., ECF No. 14 at PageID 66.) Because he was an unaccompanied minor, Godinez-Lopez was placed with the Office of Refugee Resettlement ("ORR"), which in turn released him to live with his aunt in Memphis, Tennessee. (ECF No. 14 at PageID 66.) In releasing Godinez-Lopez, it was decided that he presented no "risk of flight" or "danger to the community." (Id. (quoting 8 U.S.C. § 1232(c)(2)(A)).) The following year, U.S. Citizenship and Immigration Services ("USCIS") granted Godinez-Lopez status as a Special Immigrant-Juvenile ("SIJ"), granting him deferred action on removal for four years, or until 2027. (ECF No. 1 ¶ 44.) His Notice to Appear, which had initiated removal proceedings against him, was also dismissed. (ECF No. 14 at PageID 67.) He received a work permit valid until 2027 and began waiting for his turn to apply to adjust his status to lawful permanent resident. (ECF No. 1 ¶ 44.)

Although Godinez-Lopez's SIJ status and the accompanying grant of deferred action do not render him lawfully present in this country or prevent his removal, see Benito Vasquez v. Moniz, 788 F. Supp. 3d 177, 181 (D. Mass. 2025), that status signals that his case receives a "lower priority for removal from the United States for a specific period of time," Primero v. Mattivelo, No. 25-11442, 2025 WL 1899115, at *2 (D. Mass. July 9, 2025) (citation omitted).

On October 15, 2025, officers pulled over the work truck in which Godinez-Lopez was riding. (Id.) During the traffic stop, Godinez-Lopez was detained by immigration agents for removal proceedings. (Id. ¶¶ 44–45.) Under recently adopted guidance from the Department of

2

Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), Godinez-Lopez was subjected to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the Immigration and Nationality Act ("INA"), and was declared ineligible to be released on bond. (Id. ¶¶ 1, 3.)

This outcome was unexpected. Until recently, most immigrants apprehended by the authorities were given bond hearings. (Id. ¶ 30.) Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons. (Id. ¶ 30.) For example, § 1226(c) prohibits releasing those with certain criminal records on bond, and § 1225 precludes a bond for all "applicants for admission." "Applicants for admission" has for decades been interpreted to include those who have not been "physically present in the United States continuously" for the previous two years. See 8 U.S.C. § (b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the DOJ, issued a new policy[1] with a novel interpretation of § 1225(b)(2)(A). (Id. ¶ 32.) It reclassified all undocumented people, even those who have lived in this country for years, as "applicants for admission." (Id.) And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A). (Id.) Thus, ICE's new legal interpretation appears to make § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal must be

---

[1] "Interim Guidance Regarding Detention Authority for Applicants for Admission," July 8, 2025 (https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission) ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").

detained without a bond hearing under this new approach. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216, 220 (BIA 2025). (<u>Id.</u> ¶ 33.)

Godinez-Lopez, who "has lived in the United States for three years without incident," and without a criminal record, now "faces the prospect of months, or even years, in immigration custody, separated from his family and community." (<u>Id.</u> ¶ 47.) In his petition, he alleges violations of the INA, violations of the Administrative Procedures Act, and due process violations under the Fifth Amendment. (<u>Id.</u> ¶¶ 48–58.) He seeks a writ of habeas corpus requiring Respondents to release him or provide him with a bond hearing within seven days, or that the Court itself order him released on bond; a declaration that his detention is unlawful; and an award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (<u>Id.</u> at PageID 16–17.)

On October 24, the Court held a hearing. (ECF No. 16.) That same day, the Court issued an Order granting the petition and ordering Godinez-Lopez's release from detention pending a bond hearing before an Immigration Judge ("IJ"). (ECF No. 15.) This Order explains the Court's reasoning for that determination.

## **APPLICABLE LAW**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" <u>Lopez-Campos v. Raycraft</u>, No. 2:25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and

4

detention of aliens"). Section 1225(b) governs mandatory detention, providing as follows, in relevant part:

> (b) Inspection of applicants for admission
> . . .
> (2) Inspection of other aliens
> (A) In general
> Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant for admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall be detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." 8 U.S.C. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing as follows, in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien <u>may be arrested and detained</u> pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) <u>may continue to detain</u> the arrested alien; and
> (2) <u>may release</u> the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
> . . .

8 U.S.C. § 1226(a) (emphasis added). The exception in subsection (c) of § 1226 prohibits releasing on bond a noncitizen found to be inadmissible, like Godinez-Lopez, who also, unlike Godinez-Lopez,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

5

8 U.S.C. § 1226(c)(1)(E)(ii). "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ." Lopez-Campos, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." Id. (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[2]

## ANALYSIS

Godinez-Lopez challenges his detention without bond, offering four arguments based on statutory construction. (Id. ¶ 37.) He argues that ICE's new interpretation of § 1225(b)(2)(A) violates the INA because it (1) "is incompatible with the title" of § 1225, (2) "ignores the subject-matter" of § 1225, (3) "requires courts to ignore several words in the text" of § 1225(b)(2)(A), and (4) renders "superfluous" the exception provided in § 1226(c). (Id. ¶¶ 38–41.)

Respondents, however, assert that § 1225(b)(2)(A), not § 1226(a), applies to Godinez-Lopez because he "entered the United States without inspection or parole and thus was and remains an 'applicant for admission.'" (ECF No. 11 at PageID 50.) As a result, "he is subject to mandatory detention and not entitled to a bond hearing." (Id.) They concede that the new definition of an "applicant for admission" may seem "counterintuitive." (Id. at PageID 51.) But

---

[2] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

they argue that the INA provides only two examples of noncitizens who are not "seeking admission"—those who withdraw their application for admission and those who choose to voluntarily depart after removal proceedings have begun—and Godinez-Lopez fits neither example. (Id. at PageID 52.) Further, according to Respondents, Godinez-Lopez's interpretation of the statutes "reads 'applicant for admission' out of § 1225(b)(2)(A)." (Id. at PageID 56.) In other words, when Godinez-Lopez argues that he is no longer an immigrant "seeking admission" at the border in front of an "examining immigration officer," he ignores that he is still an "applicant for admission" and subject to Respondents' new interpretation of that term. (Id.)

The question of whether § 1225(b)(2)(A) or § 1226(a) applies to the removal of an immigrant in Godinez-Lopez's position, and thus whether such an immigrant is entitled to a bond hearing, is an issue of first impression in this Court. For the reasons stated below, the Court finds that § 1226(a) is the appropriate statute. Therefore, the petition is **GRANTED**.

I.      **Statutory Interpretation**

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Godinez-Lopez is an "applicant for admission." The title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing,"

7

whereas the title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).  Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings.  But Godinez-Lopez was not "arriving" when he was detained hundreds of miles from the border, after having been in this country for three years.  (ECF No. 1 ¶ 38.)  Moreover, he was not eligible for expedited removal proceedings.  (ECF No. 14 at PageID 70.)  Thus, the mandatory detention provision of § 1225 does not apply to him.

Relatedly, the subject matter of § 1225 undercuts ICE's reading of the statute.  Section 1225 describes the process of inspecting and removing immigrants actively crossing the border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").  Section 1225 explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ."  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  It does violence to the statute to argue that § 1225 applies to Godinez-Lopez, who has been physically present in the United States continuously for longer than two years, and who is not actively crossing the border.

Further, ICE's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Godinez-Lopez renders the following underlined words superfluous:

8

> [I]n the case of an alien who is an applicant for admission, if the <u>examining immigration officer</u> determines that an alien <u>seeking</u> admission is <u>not clearly and beyond a doubt entitled to be admitted</u>, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). As Godinez-Lopez points out, he was never seen by an "examining immigration officer." (ECF No. 1 ¶ 40.) He was not "seeking" anything at the time of his apprehension. (Id.) And he did not receive a determination that he was "not clearly and beyond a doubt entitled to be admitted." (Id.) In fact, before his apprehension in the traffic stop, all proceedings against him in Immigration Court had already been dismissed, and nothing further was pending. The language of § 1225(b)(2)(A) make sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for three years. To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondents, is untenable.

Also, ICE's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under ICE's reading, all arrested noncitizen must be mandatorily detained without bond. Thus, § 1225(c) would have no purpose. And yet courts must "give effect, if possible, to every clause and word of a statute." <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001). Godinez-Lopez's reading of the statute is the only one compatible with the presence of § 1226(c).

9

On the other hand, turning to the plain language of § 1226(a), one finds the perfect fit to the facts of Godinez-Lopez's case.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  This describes Godinez-Lopez's situation: he was apprehended in a traffic stop, arrested, and detained.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on bond."  (Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Although the plain language of §§ 1225 and 1226 is sufficient to support a finding in Godinez-Lopez's favor, the Congressional intent behind § 1226(a) is likewise clear.  Earlier this year, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) precluding persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  But Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)).

10

In view of the plain language of §§ 1225 and 1226, the arrest and detention of a noncitizen without a criminal history who has been continuously present for three years in the United States is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

**II.     Due Process**

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Here, because § 1226(a) applies to Godinez-Lopez, instead of § 1225(b)(A)(2), he is owed the process given to him under the former statute. Weighing the Mathews factors, (1) Godinez-Lopez has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and (3) given Godinez-Lopez's clean record while not in custody for the previous three years, it will be hard for the Government to demonstrate an interest in his detention.

11

As a result, his detention without bond violated his liberty interest. Indeed, before he was apprehended in a traffic stop, he had previously been adjudicated by an IJ, who dismissed the removal proceedings against him, allowing him to work in this country without restriction. His expectation of liberty cannot be casually tossed aside. He is entitled to a bond hearing before an IJ. Accordingly, the detention of Godinez-Lopez under the mandatory detention framework of § 1225(b)(2)(A) violated his due process rights.

Thus, consistent with the Court's determination at the October 24 hearing, Godinez-Lopez's petition to be released from detention pending a bond hearing before an IJ is **GRANTED**.

### III.   Attorney's Fees and Costs

Although not discussed at the October 24 hearing, Godinez-Lopez seeks an award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (ECF No. 1 at PageID 16–17.) That provision allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b). "A claim for attorney's fees and related nontaxable expenses must be made by motion . . . ." Fed. R. Civ. P. 54(d)(2)(A). "In addition to the requirements of Fed. R. Civ. P. 54(d)(2)," the Court's Local Rules require that

> a motion for an award of attorney's fees shall be supported by a memorandum setting forth the authority of the Court to make such an award, why the movant should be considered the prevailing party, if such a consideration is required for the award, and any other factors that the Court should consider in making the award. The motion shall also be supported by:
> (1)   an affidavit or declaration of counsel setting out in detail the number of hours spent on each aspect of the case, and the rate customarily charged by counsel for such work; and,
> (2)   an affidavit or declaration of another attorney in the community, who is not otherwise involved with the case, setting out the prevailing rate charged in

12

the community for similar services. Within eleven days after service of the motion, the party against whom the award is requested shall respond with any objections thereto and an accompanying memorandum setting forth why the award is excessive, unwarranted, or unjust.

Loc. R. 54.1(b).

To pursue an award of attorney's fees and costs, Godinez-Lopez must file a motion with supporting affidavits in accordance with Local Rule 54.1(b). He has twenty-one days from the date of the filing of this Order to do so.

## **CONCLUSION**

For the reasons stated above, the petition is **GRANTED**. Respondents are **ENJOINED** from pursuing Godinez-Lopez's detention under 8 U.S.C. § 1225(b)(2)(A).

**IT IS SO ORDERED,** this 31st day of October, 2025.

>  s/ Sheryl H. Lipman
>  SHERYL H. LIPMAN
>  CHIEF UNITED STATES DISTRICT JUDGE